# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD MILLER,<br><br>           Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | 1:07-cv-726-SMS<br><br>DECISION AND ORDER ON SOCIAL<br>SECURITY COMPLAINT (DOC. 2)<br><br>ORDER DIRECTING REMAND PURSUANT<br>TO SENTENCE FOUR of 42 U.S.C. §<br>405(g)<br><br>ORDER DIRECTING THE CLERK TO<br>ENTER JUDGMENT FOR PLAINTIFF<br>DONALD MILLER AND AGAINST<br>DEFENDANT MICHAEL J. ASTRUE |

Plaintiff is proceeding in forma pauperis and with counsel with an action seeking judicial review of an unfavorable decision of the Commissioner of Social Security (Commissioner) with respect to Social Security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1] The matter is currently before the Court on the parties' briefs, which have been submitted without oral argument to the Honorable

---

[1]On July 11, 2007, District Judge Lawrence J. O'Neill ordered the case reassigned to the undersigned Magistrate Judge for all purposes.

Sandra M. Snyder, United States Magistrate Judge.

I. <u>Procedural History</u>

On May 24, 2004, Plaintiff protectively filed an application for Disability Insurance Benefits (DIB), alleging disability since May 28, 2003, due to fainting and lightheadedness, hernia, memory loss, depression, GERD, back and left shoulder pain, neck pain, ringing in the left ear, sleep apnea, and loss of balance that caused falls. (A.R. 83-85, 23, 109, 143.) After Plaintiff's claim was denied initially and on reconsideration, Plaintiff appeared with a non-attorney representative and testified at a hearing before the Honorable James P. Berry, Administrative Law Judge (ALJ) of the Social Security Administration (SSA), on August 7, 2006. (A.R. 33, 41, 12.) On September 25, 2006, the ALJ denied Plaintiff's application for benefits. (<u>Id.</u> at 23-30.) After the Appeals Council denied Plaintiff's request for review on March 16, 2007, Plaintiff filed the complaint in this action on May 16, 2007. (<u>Id.</u> at 5-7.) Briefing commenced with the filing of Plaintiff's brief on March 31, 2008, and was completed on May 6, 2008, with the filing of Plaintiff's reply to Defendant's brief.

II. <u>Standard and Scope of Review</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a

preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See, Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

Cir. 1987).

III. <u>Disability</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (2006);[2] 2) whether solely on the

---

[2] All references are to the 2006 version of the Code of Federal Regulations unless otherwise noted.

4

basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 28, 2003, the alleged onset date. Plaintiff had severe impairments of vertigo and degenerative disc disease of the cervical spine, but he did not have an impairment or combination thereof that met or medically equaled a listed impairment. Plaintiff had the residual functional capacity (RFC) to lift and carry one hundred pounds occasionally and fifty pounds frequently, and to stand, walk, or sit six hours each in a workday; however, he had to avoid activities that would require climbing ropes, ladders, or scaffolds, being exposed to unprotected heights and dangerous moving machinery, or driving motor vehicles. Plaintiff was capable of performing his past relevant work as an ultrasound tester, and thus he was not disabled. (A.R. 25-29.)

1  ////

2      IV. <u>Rejection of Plaintiff's Subjective Complaints</u>

3      The ALJ recounted Plaintiff's subjective claims, including

4  light-headedness and dizziness about eighty per cent of the time

5  with inability to tolerate heat or noisy environments for hours

6  at a time; difficulty concentrating and comprehending what is

7  read over three times; ten to twelve bad days a month, with a

8  good day permitting washing dishes and performing light

9  housework, watching television for forty-five minutes to an hour,

10 and lying down for a few hours; sharp low back and shoulder pain;

11 poor sleep at night even with use of a CPAP machine; and

12 depression since 2003 which was helped by Prozac with no reported

13 side-effects, but which involved continuing inability to work and

14 lack of desire to live. (A.R. 26.) Plaintiff also reported that

15 he was able to walk for only thirty minutes at a time for a total

16 of two to three hours, stand for a total of one hour in a

17 workday, sit for four hours in a workday, and lift and carry

18 fifteen pounds. (A.R. 26.) The ALJ found that Plaintiff's

19 medically determinable impairments could reasonably be expected

20 to produce the alleged symptoms, but Plaintiff's statements

21 concerning the intensity, persistence, and limiting effects of

22 these symptoms were not entirely credible. (<u>Id.</u>)

23      Plaintiff asserts that the ALJ based his credibility

24 findings on Plaintiff's ability to do yard work and take

25 astronomy classes, reasons which Plaintiff argues are not

26 supported by substantial evidence and are not clear and

27 convincing. Further, Plaintiff complains that the ALJ found no

28 inconsistencies and failed to consider or mention Plaintiff's

work history of regular work for forty years until reaching age
fifty-eight.

The court in <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir. 2007)
summarized the pertinent standards for evaluating the sufficiency
of an ALJ's reasoning in rejecting a claimant's subjective
complaints:

> An ALJ is not "required to believe every
> allegation of disabling pain" or other non-exertional
> impairment. See <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th
> Cir.1989). However, to discredit a claimant's testimony
> when a medical impairment has been established, the ALJ
> must provide "'specific, cogent reasons for the
> disbelief.' " <u>Morgan</u>, 169 F.3d at 599 (quoting <u>Lester</u>,
> 81 F.3d at 834). The ALJ must "cit[e] the reasons why
> the [claimant's] testimony is unpersuasive." <u>Id.</u> Where,
> as here, the ALJ did not find "affirmative evidence"
> that the claimant was a malingerer, those "reasons for
> rejecting the claimant's testimony must be clear and
> convincing." <u>Id.</u>
> Social Security Administration rulings specify the
> proper bases for rejection of a claimant's testimony.
> See S.S.R. 02-1p (Cum. Ed.2002), available at Policy
> Interpretation Ruling Titles II and XVI: Evaluation of
> Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R.
> 96-7p (Cum. Ed.1996), available at 61 Fed.Reg.
> 34,483-01 (July 2, 1996). An ALJ's decision to reject a
> claimant's testimony cannot be supported by reasons
> that do not comport with the agency's rules. See 67
> Fed.Reg. at 57860 ("Although Social Security Rulings do
> not have the same force and effect as the statute or
> regulations, they are binding on all components of the
> Social Security Administration, ... and are to be
> relied upon as precedents in adjudicating cases."); see
> <u>Daniels v. Apfel</u>, 154 F.3d 1129, 1131 (10th Cir.1998)
> (concluding that ALJ's decision at step three of the
> disability determination was contrary to agency
> regulations and rulings and therefore warranted
> remand). Factors that an ALJ may consider in weighing a
> claimant's credibility include reputation for
> truthfulness, inconsistencies in testimony or between
> testimony and conduct, daily activities, and
> "unexplained, or inadequately explained, failure to
> seek treatment or follow a prescribed course of
> treatment." <u>Fair</u>, 885 F.2d at 603; see also <u>Thomas</u>, 278
> F.3d at 958-59.

The factors to be considered in weighing credibility are set
forth in the regulations and pertinent Social Security rulings.

They include the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the symptoms; treatment, other than medication, the person receives or has received for relief of the symptoms; any measures other than treatment the claimant uses or has used to relieve the symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529; S.S.R. 96-7p.

With respect to the course of analysis directed by the regulations, the ALJ is first obligated to consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). Once it is determined that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms to determine how the symptoms limit the capacity for work. § 404.1529(b), (c). The ALJ will consider all available evidence. To the extent that the claimant's symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, the symptoms will be determined to diminish the claimant's capacity for basic work activities. § 404.1529(c)(4). A claimant's statements will not be rejected solely because unsubstantiated by the available objective medical evidence. § 404.1529(c)(2.

Further, Social Security Ruling 96-7p provides in pertinent part that an ALJ has an obligation to articulate the reasons supporting the analysis:

> ...When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

S.S.R. 96-7p at 4.

Here, the ALJ stated several reasons for his findings. He reviewed the evidence of medical diagnoses and treatment and noted that the etiology of Plaintiff's dizziness and lightheadedness was undetermined, and Plaintiff's symptoms were not true vertigo. (A.R. 27-28.) The ALJ's apparent reliance on the lack of objective evidence supporting Plaintiff's subjective complaints was supported by substantial evidence. The record reflects that no cause for the dizziness and/or lightheadedness, which began in June 2003 (A.R. 256-59), was ever determined, despite extensive testing, which included a normal MRI of the

brain in July 2003 (A.R. 246), an essentially normal CT scan of the chest and abdomen with only a small hiatal hernia in July 2003 (A.R. 245), a normal neurological exam except for a mildly unsteady gait in July 2003 (A.R. 242-43), a normal carotid ultrasound in July 2003 (A.R. 237), a normal EEG in August 2003 (A.R. 229), an audiological evaluation in September 2003 that reflected no significant change in the past two years (A.R. 222), a neurological evaluation in September 2003 that revealed that Plaintiff's dizziness/lightheadedness appeared to be non-neurological (A.R. 219-20), a normal lumber puncture in October 2003 (A.R. 214-15), an x-ray of the cervical spine in December 2003 that showed degenerative changes at C3-4, C5-6, and C6-7 consisting of disc space narrowing and narrowing of the neural foramen on the left at the fifth root (A.R. 188) with a diagnosis of cervical spondylosis treated with a cervical collar (A.R. 179), a sleep study showing obstructive sleep apnea with oxygen saturation nine per cent below average (A.R. 179), an MRI of the cervical spine in March 2004 that revealed degenerative disc/desiccation changes in C3-4 and C5-7 with mild disc protrusion and mild or slight narrowing of the left C5-6 foramen due to osteophytic disease (A.R. 177), MRI and MRA brain scans in September 2004 that showed right maxillary sinus retention cyst with no abnormalities of the central nervous system (A.R. 327), and a neurological exam in February 2005 that was essentially unremarkable and that indicated that Plaintiff's chronic lightheadedness complaint was unexplained and not true vertigo (A.R. 315-17). Further, in November 2004, Plaintiff was diagnosed with disequilibrium, with the doctor suspecting migraine

equivalent and prescribing medication that nevertheless resulted in complaints of worse symptoms. (A.R. 309.)

The ALJ properly considered the lack of objective basis for Plaintiff's subjective complaints. Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered with others and can be of clear and convincing force, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir. 1999); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Here, wide-ranging medical testing repeatedly reflected normal readings that failed to provide a basis for the extent of Plaintiff's complaints.

The ALJ also reasoned that Plaintiff was able to engage in a wide variety of activities of daily living consistent with the essentially normal objective findings. (A.R. 28.) In June 2004, Plaintiff reported in a questionnaire that he tried to help with yard work and house work, groomed and dressed himself, shopped once or twice a month, cleaned his room, took out the trash, went out three or four times a week, drove, visited his father in a rest home, visited with family once or twice a week, spoke with family on the telephone with the same frequency, went out to shop and eat, had no difficulties getting along with family or friends, read but sometimes had trouble concentrating on what he read, was becoming more and more forgetful, and sometimes lost his balance and fell down. (A.R. 118-24.) Plaintiff's sister confirmed Plaintiff's cleaning, walking, watering, personal care, shopping, and even driving; he did need reminders to take

11

medication. (A.R. 126-35.) Further, in September 2004, Plaintiff reported to Dr. Damania that he could do most activities of daily living except that his sister, with whom he resided, prohibited him from cooking because of one instance of leaving the stove on, and from balancing the checkbook. (A.R. 272.) Plaintiff went to the grocery store with his sister. (Id.)

Thus, substantial evidence supported the ALJ's finding that Plaintiff's activities of daily living were inconsistent with Plaintiff's claim of disability. Daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). Here, Plaintiff's ability to spend hours engaged in many daily activities supported the ALJ's clear and convincing reasoning concerning Plaintiff's credibility.

The ALJ specifically found that Plaintiff had no difficulty doing yard work or taking astronomy photographs. (A.R. 28.) Plaintiff challenges these findings.

The ALJ relied on a progress note from December 2004, regarding observation of bruises that Plaintiff reported he had sustained when he fell over a lawnmower and was picked up by his brother-in-law. (A.R. 305.) The reason for Plaintiff's falling over the mower was not stated; it is thus possible that Plaintiff's fall was a rare event. Plaintiff had previously reported to Dr. Shireen Damania in September 2004 during a psychiatric consulting exam that recently he tried to help his brother-in-law do some work but became dizzy and fell into a

trench. (A.R. 277.) It is not clear from the record whether or not Plaintiff suffered the multiple falls while attempting yard work.

Because the context of Plaintiff's fall was unclear, the fact that he fell over a lawnmower would permit only a weak inference that he did yard work; it could also permit a weak inference that he had trouble doing yard work. In isolation it is not of clear and convincing force, although the record regarding 2004 also reflects that Plaintiff independently reported helping with yard work, and his sister reported that he watered the trees. (A.R. 118, 135.) Thus, although the record does not affirmatively reflect a lack of trouble doing yard work, it suggests that Plaintiff did yard work, and it further suggests that Plaintiff may have had difficulty performing it.

The record does not fully support the ALJ's conclusion that Plaintiff had no difficulty taking astronomy photographs. Numerous entries reflect Plaintiff's interest in astronomy and participation in observation of the stars. (A.R. 169 [Plaintiff reported in June 2004 that he "joins an Astronomy club," and liked to look at the stars at night but had trouble doing so due to "vague dizziness"]; 119, 121 [Plaintiff stated in a questionnaire from June 2004 that he had three telescopes but had only gone stargazing about two times in the past year because he got really dizzy looking up]; 135-36 [Plaintiff's sister reported in July 2004 that Plaintiff did not attend his club meetings, had not gone to a star party in over a year, and got dizzy when he looked at the stars; 307 [partially illegible note from July 2004 regarding astronomy star parties and showing the physician his

astronomy photographs]; 272 [report of Plaintiff to Dr. Damania in September 2004 that he had his own observatory but could not continue with astronomy]; 311 [progress note of nurse practitioner in November 2004 that Plaintiff's disequilibrium was worse when he looked up and that as an amateur astronomer, looking up in a telescope caused symptoms].)

The record thus reflects that Plaintiff loved stargazing, but it caused symptoms; thus, Plaintiff's participation in the activity was significantly reduced or eliminated. The record does not support the ALJ's conclusion that Plaintiff had no difficulty taking astronomy photographs despite his symptoms. The fact that Plaintiff showed his photographs to a medical source did not indicate that Plaintiff had no trouble as a photographer or even that he was taking photographs at the time the note was taken.

The ALJ also stated that it was relevant that Plaintiff reported that looking up triggered his dizziness, but yet he knowingly joined an astronomy club that involved stargazing activity. (A.R. 28.) The ALJ cited to A.R. 324, which reflected notes of a neurology exam in September 2004 by Dr. Nguyen that reflected that Plaintiff reported that looking up would trigger his dizziness. The record thus supports a finding that Plaintiff did look up and that when he did so, he experienced symptoms. This is in some measure inconsistent with Plaintiff's subjective claims, and yet it is to some extent consistent with it.

The record is unclear as to precisely when Plaintiff joined an astronomy club; one reasonable inference from the note of June 2004 that Plaintiff "joins" an astronomy club (A.R. 169) was that he knowingly joined the club at or around that time despite

14

difficulty looking up because of his dizziness because he liked
to look at the stars at night. Most of the remainder of the
record is unclear with respect to when Plaintiff joined a club,
as distinct from participating in astronomical observation, with
the exception of post-hearing evidence submitted by Plaintiff's
friend of almost thirty years, Randy M. Steiner, who wrote in
September 2006 that Plaintiff joined the local astronomy club in
1985 and was quite active, participated in public star parties,
but was too debilitated even to attend monthly club meetings and
had not taken his telescope out for many years because of his
condition due to the need for driving, heavy lifting, and
carrying his telescope and equipment. (A.R. 352.) Plaintiff
reported that he was very depressed after his surgery when he
could not <u>continue</u> what was apparently already a very developed
hobby. (A.R. 272.) Plaintiff reported that his dizziness and
lightheadedness began in June 2003. (A.R. 257-59.)

Viewed in its entirety, the record thus fairly reflects that
Plaintiff's astronomy activity predated the dizziness, but
Plaintiff's various symptoms resulted in Plaintiff's reduction
and eventual cessation of his astronomical activities. Thus, the
record does not contain substantial evidence supporting the more
specific findings of the ALJ. The primary probative force of the
ALJ's reasoning in this regard was not clear and convincing and
was not supported by substantial evidence.

In addition to the lack of objective medical evidence to
explain the source of Plaintiff's symptoms and Plaintiff's
activities of daily living, the ALJ relied on other factors. He
stated that Plaintiff denied experiencing vertigo in September

2003 (A.R. 27, 221); further, the ALJ noted Plaintiff's reference to his symptoms as "vague dizziness" in June 2004 during Dr. Nguyen's neurological exam. The ALJ concluded that his having joined an astronomy club and describing his symptoms as only vague dizziness suggested that perhaps Plaintiff's symptoms were not as severe as he reported them to be. (A.R. 27.) The record fairly supports the conclusion about Plaintiff's inconsistent or more minimal descriptions of his subjective symptoms. It is established that inconsistent statements are matters generally considered in evaluating credibility and are properly factored in evaluating the credibility of a claimant with respect to subjective complaints. In rejecting testimony regarding subjective symptoms, permissible grounds include a reputation for dishonesty, conflicts or inconsistencies between the claimant's testimony and his conduct or work record, or internal contradictions in the testimony; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether the Plaintiff's testimony is believable or not. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).

Where, as here, only some of the specific reasons stated by an ALJ for rejecting an applicant's credibility are legally sufficient or supported by the record, but others are not, the Court must consider whether the ALJ's reliance on invalid reasons was harmless error. Batson v. Commissioner of Social Security administration, 359 F.3d 1190, 1195-97 (9th Cir. 2004). Such

errors are harmless and do not warrant reversal where there

remains substantial evidence supporting the ALJ's conclusions on

credibility, and the error does not negate the validity of the

ALJ's ultimate credibility conclusions. <u>Carmickle v.</u>

<u>Commissioner, Social Security Administration</u>, 533 F.3d 1155, 1162

(9th Cir. 2008). The relevant inquiry is not whether the ALJ would

have made a different decision absent any error, but rather

whether the ALJ's decision remains legally valid despite such

error. <u>Id.</u>

Here, the ALJ validly relied on Plaintiff's admitted ability

to engage in most activities of daily living. Further, he

rejected the extent of the functional limitations claimed by

Plaintiff due to his inconsistent complaints of lightheadedness

and a vague dizziness. In doing so, the ALJ relied on evidence

that was inconsistent with disability and that had clear,

convincing probative force when considered separately from

Plaintiff's having joined an astronomy club despite his claimed

difficulty and having completed yard work and astronomical

activities without difficulty. Further, after a detailed review

of the objective medical evidence, the ALJ expressly relied on

the lack of objective support for Plaintiff's vague claim. These

reasons were of clear and convincing force and were supported by

substantial evidence. The ALJ's reliance on Plaintiff's ability

to take photographs and to accomplish yard work without

difficulty had less support in the record. However, these reasons

did not undercut the other findings by the ALJ, which were

supported by substantial evidence and were of clear and

convincing force.

Plaintiff asserts that Plaintiff's continual seeking of medical help for his dizziness, his inability to obtain relief, and his work history of forty years predating his symptoms are the most compelling evidence in the record concerning Plaintiff's credibility. This argument misses the mark because it misapprehends the standard of review. In the present case, although there might have been factors supporting Plaintiff's credibility, the ALJ nevertheless articulated clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's subjective complaints of pain. Cf. Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004). Where the evidence supporting an ALJ's rejection of a claimant's credibility is substantial, and where it demonstrates that the ALJ did not arbitrarily reject the Plaintiff's testimony, the finding will be upheld even though the finding is not as extensive as possible and does not consider all possible factors. Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996) (where the AlJ's conclusion was based on the claimant's daily activities, treating therapist's notes, and good response to treatment); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (upholding an ALJ's rejection of a claimant's credibility based on medical evidence, daily activities, and Plaintiff's testimony that a medication aided intermittent pain). It is not the role of this Court to redetermine Plaintiff's credibility de novo; although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, this Court must uphold the ALJ's decision where the evidence is susceptible to

more than one rational interpretation. <u>Burch v. Barnhart</u>, 400
F.3d 676, 680-81 (9th Cir. 2005).

Accordingly, the Court concludes that the ALJ cited clear
and convincing reasons for rejecting Plaintiff's subjective
complaints of pain to the extent alleged, and that the ALJ's
reasons were properly supported by the record and sufficiently
specific to allow this Court to conclude that the ALJ rejected
the claimant's testimony on permissible grounds and did not
arbitrarily discredit Plaintiff's testimony.

V. <u>Treating Physicians' Opinions</u>

Plaintiff challenges the ALJ's treatment of the opinions of
treating sources concerning Plaintiff's mental impairment of
depression.

The ALJ reviewed Plaintiff's medical history concerning his
depression, noting that in July 2003, Plaintiff complained of
suicidal ideation, but the next day he reported that he felt
better, would seek outpatient treatment, and declined to see a
psychiatrist. (A.R. 26, 240, 244.) On July 22, 2003, Kevin Gong,
L.M.F.T., performed a medical evaluation of Plaintiff and
assessed depression due to his medical condition, with a global
assessment of functioning of forty-one through fifty.[3] (A.R. 162-
67.) In August 2003, Plaintiff expressed an inability to cope to

---

[3] A global assessment of functioning (GAF) is a report of a clinician's
judgment of the individual's overall level of functioning that is used to plan
treatment and to measure the impact of treatment as well as to predict its
outcome. American Psychiatric Association, <u>Diagnostic and Statistical Manual
of Mental Disorders</u> at 32 (4th ed., text revision) (DSM-IV-TR). A GAF of 50
(i.e., in the range of 41-50) indicates serious symptoms (e.g., suicidal
ideation, severe obsessional rituals, frequent shoplifting) or any serious
impairment in social, occupational, or school functioning (e.g., no friends,
unable to keep a job). DSM-IV-TR at 34.

a treating physician who performed a psychiatric medical evaluation and diagnosed depression not otherwise specified with marked anxiety, with a global assessment of functioning of 55.[4] (159-61.) Plaintiff was prescribed Prozac. (A.R. 161.) In September 2003, a progress note from Dr. A.O. Mahjouri, M.D., at Kaiser Permanente reflected that Plaintiff's mood had improved, he was less anxious and angry, his affect was less labile, he had no suicidal ideations, and he was not psychotic. (A.R. 159.) Plaintiff resisted a suggestion to increase his dose of Prozac. (Id.)

With respect to Plaintiff's depression, the ALJ noted that Plaintiff had positive results with the Prozac; Plaintiff himself admitted that Prozac helped his depressive symptoms, and he did not report any side-effects. (A.R. 26, 27, 410 [testimony that the Prozac seemed to help and that Plaintiff was not so depressed that he wanted to die all the time any more.].) The record supports this finding because it reveals that in 2003, Prozac improved Plaintiff's mood and made him less anxious and angry. (A.R. 159, 161.) Several years later Plaintiff reported that he continued to take Prozac. (A.R. 157.) The ALJ validly reasoned that Plaintiff's continuing to take Prozac further supported the finding that it had positive results. (A.R. 27.)

In July 2004, Dr. Mahjouri found Plaintiff's affect slightly irritable, his mood anxious, and no suicidal ideation or

---

[4] A GAF of 55 (i.e., within the range of 51 through 60), indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  Id.

perceptual disturbances; Dr. Mahjouri diagnosed depressive disorder not otherwise specified with anxiety, and Plaintiff agreed to an increase in his dose of Fluoxetene. (A.R. 307.)

The ALJ also recounted the findings of Shireen R. Damania, M.D., who reviewed Plaintiff's medical history regarding his mental condition, performed a consultative psychiatric and neurological evaluation on September 27, 2004, and recorded the process in a detailed letter. (A.R. 29, 275-79.) Dr. Damania found Plaintiff to be pleasant, appropriate, and relating well. Interpersonal skills and social functioning were adequate; there were no difficulties in memory, concentration, persistence, pace, or attention span or any emotional lability or deterioration. Plaintiff's affect was broad and appropriate to thought content and situation, intellect was average, insight and judgment were fair, and there was no evidence of a thought disorder. Plaintiff reported that Prozac dispelled his thoughts of suicide and caused Plaintiff to feel better emotionally, although he reported that he could not return to his job of ultrasonic testing of medical and industrial gas cylinders because of fear of making a mistake that could hurt someone. (Id.)

As the ALJ noted, Dr. Damania opined that Plaintiff had a mood disorder due to general medical condition with depressive features, moderate psycho-social stressors of unemployment and health problems (lightheadedness and dizziness), and a GAF of fifty-five. (A.R. 279.) He could understand, carry out, and remember three-step and four-step job instructions; respond appropriately to co-workers, supervisors, and the public; and was limited in an unspecified manner or extent in responding

21

appropriately to usual work situations and dealing with changes
in a routine work setting. Any such limitations were due to
subjective allegations of continuous and constant dizziness,
lightheadedness, and feeling faint. (Id.)

The ALJ stated:

> The undersigned also gives this assessment great
> weight as Dr. S. Damania is Board Certified; she
> conducted an extensive examination, and she reviewed
> prior medical evidence which she took into account
> when she provided her complete report of findings.
> Dr. S. Damania's opinion is consistent with
> claimant (sic) having no previous psychiatric
> history, and that any depressive symptoms are in
> response to claimant's inability to work secondary
> to physical problems.

(A.R. 29.)

When noting state agency physician's opinions concerning
Plaintiff's residual functional capacity (RFC), the ALJ expressed
reasons for crediting the opinions of state agency physicians:

> Claimant's depression is seen as non-severe as well
> (citations omitted). Considerable weight is given this
> assessment as the consultant has thorough (sic)
> reviewed the available medical record (citation
> omitted); he is very familiar with the criteria
> for disability under the Social Security Act; and
> his assessment is consistent with the medical record
> when considered in its entirety, as discussed above.

(A.R. 29.)

Substantial evidence supported this finding. State agency
medical consultant Evangeline Murillo, M.D., completed a
psychiatric review technique form on November 23, 2004,
concluding that Plaintiff's affective disorder, consisting of a
mood disorder due to general medical condition with depressive
features, was not severe. (A.R. 280, 280-93.) On March 23, 2005,
state agency consultant Allen Middleton, Ph.D., wrote that he had
reviewed all the evidence in the file and affirmed the assessment

as written as of November 2004. (A.R. 280.) No functional limitations were set forth. (A.R. 290-291.)

Plaintiff reported to Dr. Damania that he was seeing Dr. Mahjouri, a psychiatrist at Kaiser Permanente, every three months but did not see her more often because there was no need to do so; he was not in any other type of psychiatric counseling. (A.R. 277.) In December 2004 at a medical follow-up, Dr. Mahjouri diagnosed depression not otherwise specified with anxiety (A.R. 305.)

Plaintiff argues that the ALJ did not state specific and legitimate reasons for rejecting the RFC assessed by his treating physicians and for favoring instead the opinion of examining, consulting psychiatrist Dr. Damania and the opinions of the non-examining state agency physicians. Plaintiff points to the assessment of August 1, 2003, of his treating physician, Dr. Mahjouri, that Plaintiff had depression not otherwise specified with marked anxiety and a GAF of 55. (A.R. 161.)

As to severity, an impairment is severe if it significantly limits one's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities include the abilities and aptitudes necessary to do most jobs, such as physical functions of walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). If the evidence establishes

only that one's impairment or combination thereof was only a slight abnormality that had no more than a minimal effect on an individual's ability to work, it is not severe. See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). An ALJ may find that a claimant lacks a medically severe impairment or combination thereof only when his conclusion is clearly established by medical evidence. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

Here, none of Plaintiff's treating physicians opined that his disability would endure for twelve months or would result in any specific and significant limitations of Plaintiff's functionality. It is Plaintiff's burden to establish that an impairment was severe and would meet the duration requirement of lasting or being likely to last twelve months. 20 C.F.R. §§ 404.`505, 404.1520(c); Saelee v.Chater, 83 F.3d 322, 324 (9th Cir. 1996).

Plaintiff argues that evidence consisting of the unsworn written statement of Plaintiff's sister, Jane Sliger, considered by the ALJ (A.R. 28) would support a finding of a severe mental impairment. (A.R. 126-31.) Plaintiff's sister reported that Plaintiff could no longer work, do his own banking, visit friends, or take his medication without being told to do so. (A.R. 135.) He needed to be reminded to take his medicine and put on clean clothes and shave. (A.R. 135.) He could drive, go out alone, handle paying bills, count money, handle a savings account, and use a checkbook or money orders. (A.R. 129.) His condition affected his lifting, bending, standing, walking, memory, concentration, or stair climbing. (A.R. 131.)

Plaintiff's sister's statement was not binding on the Commissioner insofar as it addressed the ultimate issue of disability. A determination of whether or not a claimant meets the statutory definition of disability is a legal conclusion reserved to the Commissioner; the opinion of even a medical source on the ultimate issue of disability is not conclusive. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Her responses regarding his abilities to bank and handle simple financial matters, and go out alone were inconsistent. Her statement regarding the functional limitations of lifting, bending, standing, walking, memory, concentration, or stair climbing were imprecise. Plaintiff's sister's statement did not establish that Plaintiff's impairment was severe.

Further, even if the ALJ's finding as to severity was erroneous, the ALJ considered the effect of Plaintiff's mental impairment on his functioning by considering the information relevant to Plaintiff's RFC, which included the express opinion of Dr. Damania and the state agency consultants. (A.R. 29.) It is established that an ALJ's failure to find an impairment severe, even if erroneous, is harmless error where at the later RFC stage of the analysis, the ALJ discussed the impairment, the medical findings, the pertinent symptoms, and the applicable opinions concerning functional limitations. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. § 404.1527. If a treating physician's opinion is

25

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." Id. § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Id. § 404.1527(d)(2)(i)-(ii). Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. Id. § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Id. § 404.1527(d)(3)-(6). Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

An ALJ may disregard a treating physician's opinion that is controverted by other opinions only by setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989). This burden is met by stating a detailed and thorough summary of the facts and conflicting clinical evidence, stating the interpretation of the evidence, and making findings. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir 1986). The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The uncontradicted opinion of an examining physician may be rejected only if the Commissioner provides clear and convincing reasons for rejecting it. Id.; Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001). An ALJ can reject the opinion of an examining physician and adopt the contradictory opinion of a nonexamining physician only for specific and legitimate reasons that are supported by substantial evidence in the record. Moore v. Commissioner of Social Security Administration, 278 F.3d 920, 925 (9th Cir. 2002) (quoting Lester v. Chater, 81 F.3d at 830-31). The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on independent clinical findings. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Independent clinical findings can be either 1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or 2) findings based on objective medical

1  tests that the other physician has not himself or herself
2  considered. <u>Orn v. Astrue</u>, 495 F.3d at 632.

3      Here, the independent findings of Dr. Damania were
4  substantial evidence supporting Dr. Damania's opinion. The ALJ
5  reasoned that Dr. Damania's opinion considered the previous
6  medical evidence (A.R. 29); thus, the ALJ relied on the
7  comprehensive nature of the opinion. The ALJ also relied on the
8  extensive examination given to Plaintiff, and on the consistency
9  of Dr. Damania's opinion with the objective medical evidence, and
10 specifically, Plaintiff's lack of a previous psychiatric history.
11 The record bears out the observation that until Plaintiff
12 suffered his physical problems, he did not have a history of
13 psychiatric problems or treatment. The ALJ's reference to a lack
14 of psychiatric history is reasonably interpreted as a comment
15 regarding the lack of treatment history before Plaintiff's
16 physical conditions arose. Finally, the ALJ noted that
17 Plaintiff's psychological problems seemed to be secondary to
18 physical problems, which was also borne out by the record.

19      Likewise, the ALJ's acceptance of the state agency
20 physicians' assessment that the depression was not severe was
21 based on the consultants' review of all available medical
22 evidence of record, familiarity with the pertinent criteria of
23 disability, and the consistency of the assessment of the medical
24 record. (A.R. 29.) Substantial evidence supports this assessment.

25      VI. <u>Omission of Limitations from the RFC Findings</u>

26      Plaintiff notes that in asking the VE hypothetical questions
27 at the hearing, the ALJ failed to include functional limitations
28 that were imposed by experts whose opinions were expressly

28

credited by the ALJ; further, Plaintiff asserts that the ALJ omitted his reasoning for failing to adopt those portions of the experts' opinions upon which he purported to rely. Thus, argues Plaintiff, the ALJ failed to articulate his reasoning adequately concerning important, probative evidence, which further affected the testimony of the VE regarding Plaintiff's ability to perform work, upon which the ALJ in turn relied.

A fundamental principle of review operative in this case is that this Court is limited to reviewing the findings of the ALJ and to reviewing the specific facts and reasons that the ALJ asserts. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (holding in part that the mere presence of evidence in the record that would support an ALJ's conclusions, in the absence of the ALJ's discussion thereof, was insufficient). An ALJ need not discuss evidence that is neither significant nor probative. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). However, with respect to significant, probative evidence, such as an expert opinion, an ALJ must explicitly reject the opinion and set forth specific reasons of the requisite force for doing so. Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) (holding that the ALJ erred in failing to explicitly reject an opinion and set forth specific, legitimate reasons for crediting another opinion). The district court cannot make findings for the ALJ. Id. A district court cannot affirm the judgment of an agency on a ground the agency did not invoke in making its decision. Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001). Even application of the harmless error rule is circumscribed by this basic requirement. It has recently been held that where an error

consists of an ALJ's failure to discuss probative evidence properly, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the evidence, could have reached a different disability determination. <u>Stout v. Commissioner of Social Security</u>, 454 F.3d 1050, 1056 (9th Cir. 2006) (concluding that an ALJ's failure to evaluate and state reasons for evaluating lay testimony was not harmless). The authorities thus reflect the fundamental principle that the ALJ's opinion must contain sufficient findings to permit intelligent judicial review, particularly with respect to significant probative evidence. <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984).

A. <u>Instructions</u>

Plaintiff argues that the ALJ, who expressly gave great weight to Dr. Damania's assessment, erroneously failed to include in the RFC, and in the hypothetical to the VE, Dr. S. Damania's limitation to jobs requiring three-step and four-step instructions. (A.R. 29, 279.) The record bears out Plaintiff's assertion. The ALJ did not explain his apparent rejection of this limitation that was articulated by the examining consultant. Even though the impairment may not be severe, its limiting effects should be considered in combination with all other impairments by the ALJ in determining the RFC. It is established that in assessing a claimant's RFC, it is necessary to consider the limiting effects of all the claimant's impairments, even those that are not severe. 20 C.F.R. § 404.1545(a), (e); Soc. Sec. Ruling 96-8p at 4; <u>Reddick v. Chater</u>, 157 F. 3d 715, 724 (9th Cir. 1998); <u>Beecher v. Heckler</u>, 756 F.2d 693, 694-95 (9th Cir. 1985).

The ALJ must consider all factors that might have a significant impact on an individual's ability to work, including the side-effects of medications as well as subjective evidence of pain; it is improper to focus on a single disease when other significant conditions exist. Varney v. Secretary of HHS, 846 F.2d 581, 585 (9th Cir.), relief modified, 859 F.2d 1396 (1988).

It is not clear how the limitation to three-step and four-step instructions would affect Plaintiff's ability to perform his past relevant work of ultrasound tester. The ALJ did not assign a classification number from the Dictionary of Occupational Titles (DOT) to the ultrasonic testing position. The VE testified that Plaintiff's past relevant work (PRW) of ultrasonic tester was medium and skilled (A.R. 415.) Although the VE testified that one who could lift and/or carry one hundred pounds occasionally and fifty pounds frequently, and stand/walk/sit six hours each, but who needed to avoid climbing ladders, ropes, and scaffolds, and being exposed to unprotected heights, dangerous moving machinery, and driving a motor vehicle, could perform the position of ultrasonic testing, the limitation to jobs requiring no more than three-step or four-step instructions was not communicated to the VE. (A.R. 415.)

The effect of such a limitation on the ability to perform Plaintiff's past relevant work is unclear.

B. Limits on Balancing

The ALJ stated that he gave considerable weight to the opinion of the state agency physicians as to Plaintiff's RFC with respect to his physical impairments. (A.R. 29.) The state agency physicians had opined that Plaintiff had the RFC to work at all

1  levels of exertion but was precluded from climbing ladders, rope,
2  or scaffolds; could only occasionally climb ramps or stairs and
3  balance; and had to avoid unprotected heights and dangerous
4  moving machinery due to constant dizziness/tinnitus and a history
5  of atrial fibrillation and sleep apnea. (A.R. 294-301, 296, 298.)

6      Plaintiff challenges the ALJ's failure to include the state
7  agency doctors' limitation to occasional balancing. Plaintiff
8  points to the discussion of "balancing" given in Soc. Sec. Ruling
9  96-9p, which describes "balancing" as maintaining body
10  equilibrium to prevent falling when walking, standing, crouching,
11  or running on narrow, slippery, or erratically moving surfaces.
12  Id. at pp. 6-7. If one is limited to balancing only on such
13  surfaces, then this would not in itself significantly erode the
14  unskilled sedentary occupational base, but a limit in balancing
15  even when standing or walking on level terrain might result in a
16  significant erosion of the unskilled sedentary occupational base.
17  Id. at p. 7. Plaintiff argues such a limitation is supported by
18  the evidence in this case, and this limitation should thus have
19  been included in the RFC stated by the ALJ.

20      The ALJ expressly noted the restrictions stated by
21  consulting internist Dr. Rustom F. Damania, who examined
22  Plaintiff in September 2004 and, based on subjective symptoms,
23  limited Plaintiff's climbing, balancing, and working close to
24  dangerous machinery. (A.R. 28, 274.) Further, the ALJ expressly
25  placed "[g]reat weight" on Dr. Damania's opinion because he had
26  reviewed prior radiological reports and considered them when he
27  conducted a thorough examination of Plaintiff; he provided a
28  detailed report of his findings; and he produced an assessment

that the ALJ adjudged to be consistent with the clinical, radiological, and laboratory findings previously noted by the ALJ. (A.R. 28.)

The Court notes that the opinion of Dr. Damania did not clearly state the precise nature and extent of the limitations on balancing. Thus, the ALJ could have meant to adopt other or lesser limitations on balancing. However, the ALJ failed to include any limitation at all on balancing in the RFC despite placing great weight on Dr. Damania's opinion. Likewise, limitations of occasional climbing of ramps or stairs were omitted without explanation.

Further, the ALJ also expressly gave "[c]onsiderable weight" to the opinion of the state agency medical consultant Dr. Carmen E. Lopez, M.D., who in November 2004 opined that Plaintiff's RFC was unlimited with respect to lifting and carrying, but included postural limitations of only occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and only occasional balancing. (A.R. 29, 294-301, 296.)

The ALJ did not explain in detail why he did not adopt the limitation on balancing that the state agency physician stated or on the function of climbing ramps and stairs.

In summary, the ALJ expressly placed great or considerable weight on the opinions of various medical experts, but failed to articulate reasons for rejecting parts of those opinions.

C. Hazards

Plaintiff further contends that the ALJ failed to include adequate environmental limitations regarding hazards in the RFC. The ALJ stated that Plaintiff's RFC included avoiding activities

33

that would require climbing ropes, ladders, or scaffolds, and avoiding exposure to unprotected heights, dangerous moving machinery, and driving motor vehicles. (A.R. 25.) The ALJ thus apparently adopted the limitation imposed by Dr. R. Damania to limit balancing and working close to dangerous machinery. (A.R. 28.) Plaintiff argues that "hazards" for SSA purposes include phenomena that are unusual in unskilled sedentary work, including moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives, and exposure to toxic, caustic chemicals. Soc. Sec. Ruling 96-9p at pp. 7-8. The record shows that Plaintiff's past work involved moving cylinders weighing ten to 175 pounds, balancing them, and filling high-pressure gas cylinders, some of which are flammable, and a mistake as to which could kill someone. (A.R. 14.) Plaintiff argues that the ALJ should have given the VE a more complete definition of hazards.

The ALJ concluded that Plaintiff could perform his past relevant work of an ultrasound tester because it did not require the performance of any work-related activities precluded by the RFC; the ALJ relied on the testimony of the vocational expert (VE) to the effect that Plaintiff could perform the work of an ultrasound tester as it was actually and generally performed. (A.R. 29.)

The VE testified that Plaintiff's past work of ultrasonic tester was medium and semi-skilled. (A.R. 415.) The VE testified that one with the RFC to lift and carry 100 pounds occasionally and fifty pounds frequently; stand, walk, and sit for six hours

each; avoid climbing ladders, ropes, and scaffolds; and avoid
exposure to unprotected heights, dangerous moving machinery, and
driving a motor vehicle, the person could perform the job of
ultrasound testing. (A.R. 415-165.)

The VE testified that one with a similar background but with
the RFC to lift and carry fifteen pounds, stand thirty minutes
total, walk two to three hours, sit four hours total, experience
episodes of dizziness throughout the day about eighty per cent of
the time, need a cane to assist with walking and balancing, and
would have periods of decreased concentration and focus, with
feeling fatigued or tired during a workday, could not perform any
of Plaintiff's past relevant work or any other jobs that existed
in the national economy. (A.R. 415-16.)

The ALJ concluded:

> The claimant is capable of performing past
> relevant work as an ultrasound tester. This work
> does not require the performance of work-related activities
> precluded by the claimant's residual functional capacity
> (20 C.F.R. 404.1565).
> According to vocational testimony, in comparing the
> claimant's residual functional capacity with the physical
> and mental demands of this work, claimant is able to
> perform it as actually and generally performed. The
> vocational expert's testimony is accepted in accordance
> with SSR 00-4p.

(A.R. 29.)

Under the circumstances, the record does not support a
conclusion that Plaintiff could perform his past relevant work in
ultrasonic testing. Defendant argues that because Plaintiff did
not show that she could not perform her past relevant work, it
never fell on the Commissioner to produce evidence at step five.
Thus, any error was harmless.

However, the record does not support the ALJ's conclusion.

The evidence concerning Plaintiff's past relevant work that the ALJ relied upon was the vocational expert's testimony, which did not contain the limitations, consistently set forth by the experts upon whom the ALJ relied, concerning some types of climbing and balancing and three-step and four-step instructions. Further, the subject of hazards was not specifically explored to establish that Plaintiff's position did not require exposure to hazards of a type or extent beyond that approved by the experts in turn relied on by the ALJ.

Thus, substantial evidence does not support the conclusion that Plaintiff's past work was within the capacity of Plaintiff to perform. Further, the record is devoid of any findings explaining how the apparent inconsistencies between Plaintiff's RFC, as posited by the experts whose opinions formed the basis for the ALJ's findings, and the capacity required to perform the position, could be explained or reconciled. In this respect, the law is established:

> Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62. See 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965. This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e) The claimant must be able to perform:
> 1. The actual functional demands and job duties of a particular past relevant job; or
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.
> SSR 82-61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82-62.

Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).

Here, the ALJ failed to make adequate findings regarding the relation of the residual functional capacity to the past work. He did not fully investigate or make findings as to the demands of Plaintiff's past work beyond a rather perfunctory conclusion that Plaintiff's past relevant work did not require the performance of work-related activities precluded by Plaintiff's RFC. (A.R. at 29.) He did not address the evidence in the record that suggested that the position required some functions that were within the limitations that the ALJ found restricted Plaintiff's RFC.

Accordingly, the matter should be remanded. It is clear that the ALJ has placed great weight on the opinions of the various experts, but he has failed to compare the requirements of Plaintiff's past relevant work with the precise limitations that the physicians put on Plaintiff's functioning. Meaningfully specific limitations on climbing, balancing, instructions, and hazards should be articulated in connection with Plaintiff's RFC in accordance with the experts' opinions upon which the ALJ placed such weight in the initial opinion, and then the ALJ should compare those limitations with the requirements of Plaintiff's past relevant work as developed by the VE and by Plaintiff's testimony. This is not a case in which the result is clear; thus, remand is appropriate for the ALJ to make articulate appropriate findings, based on substantial evidence, and to carry on with the five-step analysis as appropriate.

VII. Rejection of Lay Statements

Plaintiff argues that the ALJ wrongfully erred in failing to advert to statements made by Randy Steiner, a lay witness who after the hearing before the ALJ in August 2006 sent in a letter

37

from September 2006. (A.R. 352, 6, 8, 23, 30.) Mr. Steiner informed the Commissioner that Plaintiff could not sit for long, could not climb stairs, hardly left his home, and had lost all his zest and exuberance for life. (A.R. 352.)

The Appeals Council (AC) stated that although it had denied Plaintiff's request for review on January 26, 2007, it was setting aside its earlier action to consider additional information. (A.R. 5.) The AC considered the evidence submitted to the Appeals Council, which included Mr. Steiner's letter. (A.R. 6, 8.) The AC did not address anything specific regarding the nature of the additional evidence, but it stated that it found that the information did not provide a basis for changing the ALJ's decision. (A.R. 6.) It said that it found no reason under its rules to review the ALJ's decision and thus denied the request for review. (A.R. 5-8.) It stated that under its rules, it would review a case for stated reasons, including abuse of discretion by an ALJ, an error of law, a dearth of substantial evidence to support the action, findings, or conclusions of the ALJ, a broad policy or procedural issue that may affect the general public interest, or receipt of new and material evidence that renders the decision contrary to the weight of all the evidence then in the record. (A.R. 5.) See, 20 C.F.R. § 404.970(a).

When the AC denies review of an ALJ's decision, the ALJ's decision becomes the final agency decision. 20 C.F.R. § 404.981. However, where the claimant submits evidence after the ALJ's decision, and the AC specifically considers that evidence, then this Court considers on appeal both the ALJ's decision and the

additional material submitted to the Appeals Council. Regulatory law provides that the AC will review a case if there appears to be an abuse of discretion by an ALJ; there is an error of law; the action, findings, or conclusions of the ALJ are not supported by substantial evidence; or there is a broad policy or procedural issue that may affect the general public interest. 20 C.F.R. § 404.970(a). However, where the claimant submits evidence after the ALJ's decision, and the AC specifically considers that evidence, then this Court considers on appeal both the ALJ's decision and the additional material submitted to the Appeals Council. Ramirez v. Shalala, 8 F.3d 1449, 1451-52, 1454 (9th Cir. 1993).

Regulatory law in turn provides that in reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision; it will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record. 20 C.F.R. § 404.970(b). Ramirez v. Shalala, 8 F.3d 1449, 1451-52, 1454 (9th Cir. 1993).

Here, neither the regulations nor the Appeals Council's order states any reason or finding germane to the statement of third party Steiner.

The law generally applying to the requirements for treatment of third party statements has developed in the context of the ALJ's duty to make findings regarding evidence available at the

time of a hearing before the ALJ. It is established that lay witnesses, such as friends or family members in a position to observe a claimant's symptoms and daily activities, are competent to testify to a claimant's condition; the Commissioner will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). An ALJ cannot discount testimony from lay witnesses without articulating specific reasons for doing so. Id. at 919.

Lay witnesses constitute other non-medical sources under the pertinent regulation. 20 C.F.R. § 404.1513(d)(4). Information from such other sources cannot establish the existence of a medically determinable impairment, a demonstration requiring evidence from acceptable medical sources; however, information from such other sources may be based on special knowledge of the claimant and may provide insight into the severity of the impairment/s and how it affects the person's ability to function. Soc. Sec. Ruling 06-03p pp. 2-3.

With respect to evaluating evidence from other non-medical sources such as spouses, parents, friends, and neighbors who have not seen the claimant in a professional capacity in connection with the impairments, the weight to which evidence of is entitled will vary according to the particular facts of the case; it is appropriate to consider factors such as the nature and extent of the relationship with the claimant, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence. Soc. Sec. Ruling 06-03p p. 6. The adjudicator should generally explain the weight given the

opinions from such other sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning when such opinions may have an effect on the outcome of the case. Id.

Where an ALJ's error lies in a failure properly to discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. Stout v. Commissioner, 454 F.3d 1050, 1056 (9th Cir. 2006).

Here, it is questionable whether the opinion of the ALJ could ever be adequate to provide specific reasons regarding evidence not in the record at the time the opinion was written. The Court has considered the matter in light of the entire record and the necessity, previously stated, to remand the case for the ALJ to undertake further analysis and statement of reasons. Because the matter must be remanded, the proceedings upon remand shall include consideration by the ALJ of the evidence before the Appeals Council and articulation of adequate findings and reasons regarding the evidence.

VIII. Disposition

Accordingly, it IS ORDERED that

1. Plaintiff's social security complaint IS GRANTED, and

2. The matter IS REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this decision, of Plaintiff's status as disabled, including

consideration of evidence presented to the Appeals Council and articulation of legally sufficient findings concerning that evidence; for a complete and adequate articulation of Plaintiff's residual functional capacity (RFC) in conformity with the expert opinions adopted by the ALJ, and for a comparison of Plaintiff's RFC with the requirements of Plaintiff's past relevant work, and articulation of the ALJ's findings in that regard and findings concerning Plaintiff's ability to perform his past relevant work; and, to the extent appropriate, for further consideration of whether on the basis of the Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform any other gainful and substantial work within the economy; and

    3. Judgment BE ENTERED for Plaintiff Donald Miller and against Defendant Michael J. Astrue.


IT IS SO ORDERED.

**Dated:    October 6, 2008**                            **/s/ Sandra M. Snyder**
                                            UNITED STATES MAGISTRATE JUDGE